**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION**

IN RE:

MICHAEL AND TAMMY RAGLE                                    CASE NO. 06-30208

DEBTORS

**MEMORANDUM OPINION AND
ORDER**

This matter comes before the court on the motion of the United States Trustee ("UST") for dismissal pursuant to 11 U.S.C. Sec. 707(b)(2) (Doc. 18) and the Debtors' opposition thereto (Docs. 28, 29), presenting another issue not yet considered in this district in the growing body of case law related to means test calculations. The court agrees that it has jurisdiction over the motion according to 28 U.S.C. Sec. 1334(a) and (b), 28 U.S.C. Sec. 157(a) and (b)(1) and 28 U.S.C. Sec. 151. This is a core proceeding pursuant to 28 U.S.C. Sec. 157(b)(2)(A).

The issue to be decided today has been narrowly drawn by the parties and submitted upon Joint Stipulations of Fact (Doc. 26). In support of their respective positions, the U.S. Trustee has submitted a memorandum of law (Doc. 27) and the Debtors Michael and Tammy Ragle ("Debtors") have filed memoranda in opposition to the motion to dismiss (Doc. 28, 29) addressing points raised in the U.S. Trustee's memorandum. The facts, which the parties agree are straight forward and undisputed, are recounted below.

The Debtors filed their Chapter 7 petition (Doc. 1) on August 16, 2006. As required by 11 U.S.C. Sec. 704(b)(1)(a), the U.S. Trustee reviewed the materials submitted by Debtors with their bankruptcy and filed a Statement of Presumed Abuse (Doc. 16) on October 4, 2006. The Trustee thereafter filed the present motion to dismiss (Doc. 18), pursuant to 11 U.S.C. 707(b)(2), on October 30, 2006. In response, Debtors filed an amended form B22A (Doc. 21) in an effort to substantiate additional expenses which, if approved, lower their monthly net disposable income sufficiently to rebut, if not avoid, the presumption of abuse as determined by the prior form B22A.

Mr. Ragle, who lives in Lawrenceburg, Kentucky with his wife and family, embarks on a daily commute to his employment with FIBA as a welder in Louisville, Kentucky that encompasses just over 116 miles per day over a five-day work week, or almost 2,500 miles per month. The vehicle in which Mr. Ragle commutes to his job is a 1987 Honda Accord with over 225,000 miles on it. The amended form B22A reveals that Mr. Ragle's average income during the six months preceding the bankruptcy filing was $2,065.24 per month.

Mrs. Ragle is also employed and commutes daily to Frankfort, Kentucky, which entails traveling almost 34 miles daily, also over a five-day work week, or 730 miles monthly. Mrs. Ragle drives a 2004 Jeep Liberty with 40,000 miles on it for her commute. According to the Joint Stipulations, the Debtors' combined monthly gas expense averages about $444. Mrs. Ragle's income for the six months preceding the bankruptcy filing was $2,620.87, which the parties stipulated varies from time to time, although the reason for such variance was not disclosed.

Other facts as stipulated by the parties are that the Debtors are surrendering

2

their home and have ascertained that their rent expense will be $700 per month; that their Schedule J reflects that the Debtors have combined transportation and car maintenance expenses of $550 and $125, respectively, for the Honda and the Jeep; and that the Debtors claim additional monthly expenses in the amounts of $275 for the purchase of a replacement vehicle for the Honda when and if they obtain their discharge and $101.50 additional transportation operating expense allegedly not captured by the IRS operating allowances authorized in lines 22 through 24 of form B22A.

The sole legal issue as stated in the parties' Joint Stipulations is whether the Debtors should be entitled to claim on their amended form B22A the additional expenses of $275 for an eventual replacement vehicle and the $101.50 that they argue is required for gas for two vehicles, one being twenty (20) years old with high mileage, used for long commutes.  The parties debate the appropriateness of allowing the additional expenses claimed by the Debtors to be factored in as "special circumstances" allowed pursuant to 11 U.S.C. 707(b)(2)(B)(i), which provides that

> [i]n any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

The UST argues that none of the expenses the Debtors seek to claim constitute the type of "special circumstances" envisioned by Congress to be of sufficient severity or beyond the Debtors' control in order to rebut the statutory presumption of abuse.  The Debtors in turn assert that the examples set forth in section 707(b)(2)(B)(i) are not

3

intended to be exhaustive and that the distances between their residence and respective job locations are beyond their reasonable control, given their financial resources and the availability, or lack thereof, of alternate employment. The Debtors alternatively point out that if they were allowed to claim the transportation ownership expense, provided within Line 24 of Form B22A, for their second vehicle, which Debtors own free and clear of any liens, the presumption of abuse would not arise at all.

Interestingly, it is Debtors' alternative argument that has been recently taken up by various bankruptcy courts in determining whether or not certain vehicle expenses should be included in an appropriate means test calculation. Because determination of whether a deduction for Debtors' second vehicle is available on Line 24 of Form B22A may in fact eliminate the presumption of abuse without the need to decide whether the Debtors have sufficiently rebutted the presumption, the court will begin its analysis with Debtors' alternative argument. Indeed, many bankruptcy courts have rendered a number of relevant decisions on the issue since the parties' case was submitted.

The "means test" was added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), providing in pertinent part in section 707(b)(2)(A)(i) as follows:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii) and (iv), and multiplied by 60 is not less than the lesser of-
>
> > (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or
> >
> > (II) $10,000.

As of the submission of this matter, the Debtors' amended form B22A shows that the Debtors' annualized current monthly income is $59,173.32, which exceeds the median family income of $47,955 for a household size of three (3) persons residing in the state of Kentucky.  Part VI of Debtors' form B22A reflects, and the parties state in their Joint Stipulations, that without the disputed expenses sought to be claimed by Debtors, their monthly disposable income after the means test is $216.13, thereby exceeding the abuse presumption figure by $49.47 per month.

The Debtors briefly assert in their memorandum opposing the UST's motion to dismiss that if they were permitted to claim the transportation ownership expense for their second car, then their allowed deductions would leave no monthly disposable income and the presumption of abuse would not arise.  The standard and actual expenses the Debtors may claim are set forth in sections 707(b)(2)(A)(ii), (iii) and (iv). Section 707(b)(2)(A)(ii)(I) provides in relevant part that

> [t]he debtor's monthly expenses shall be the debtor's **applicable monthly expense amounts specified** under the National Standards and Local Standards, and the debtor's **actual monthly expenses for the categories specified** as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief.... (emphasis added).

Vehicle ownership expenses are derived from local standards issued by the Internal Revenue Service ("IRS"), which, for the area in which these Debtors reside, provide for ownership costs of $471 for a first vehicle and $332 for a second vehicle.  Here, the Debtors deducted $471 for ownership costs related to their first car, the 2004 Jeep, less their average monthly payment for the Jeep of $368.08, yielding a deductible net ownership expense of $102.92.  Calculation of a net ownership expense for their

5

second, unencumbered vehicle would yield a deductible net ownership expense of $332, since there is no average monthly payment to subtract from the designated IRS transportation standard provided for the second vehicle.

The additional deduction of $332 would increase the Debtors' total deductible expenses allowed under IRS Standards (Line 33 of form B22A) to $4,370.78 from $4,038.78 and the total of all deductions allowed under section 707(b)(2) from $4,714.98 to $5,046.98.  Consequently, the Debtors would have no monthly disposable income under section 707(b)(2), since $4,931.11 less $5,046.98 yields a negative sum.  The question, therefore, is whether the Debtors here may reduce their disposable income by deducting the applicable ownership expense for a second vehicle on which they owe no debt.

As the court noted at the outset, the existing case law examining the stated question reveals a split in authority, although recently, seemingly more courts have ruled in favor of allowing the transportation-ownership deduction where the debtor owns a car free and clear of liens.  Ironically, courts reaching opposite conclusions have based their decisions on various rationales, including the "plain language" of the statue, section 707(b)(2)(A)(ii).  *See, e.g.,* cases holding that a debtor cannot deduct an ownership expense for a vehicle he owns free and clear, in the context of a Chapter 7 petition, **In re Barraza,** 346 B.R. 724 (Bankr. N.D.Tex. 2006); **In re Oliver,** 350 B.R. 294, 301 (Bankr. W.D.Tex. 2006); and **In re Harris,** 353 B.R. 304 (Bankr. E.D.Okla. 2006).  Decisions in which courts reached the completely opposite result, in Chapter 7 cases, finding that debtors may deduct a vehicle ownership expense, regardless of

whether the debtor actually has a note or lease payment include **In re Fowler,** 349 B.R. 414 (Bankr.D.Del. 2006); **In re Hartwick,** 352 B.R. 867 (Bankr. D. Minn. 2006); **In re Prince,** 2006 WL 3501281 (Bankr. M.D.N.C. 2006); **In re Wilson,** 356 B.R. 114 (Bankr. D.Del. 1006) and **In re Zak,** 2007 WL 143065 (Bankr. N.D. Ohio 2007). This court concurs with the observation of the court in **In re Sawdy,** 2007 WL 582535 (Bankr. E.D.Wis. 2007), which wryly noted that if the language of sec.707(b)(2)(A)(ii)(I), when given its ordinary and literal meaning, is plain, clear and unambiguous, then how could so many courts have interpreted it in exactly opposite ways? "Doesn't the concept of 'plain' meaning carry with it the implication that the same meaning would be 'plain' - ordinary, literal and obvious - to every reader?" **Id.,** at *4.

While the growing body of case law on this issue contains a variety of rationales for either permitting a debtor to deduct the applicable ownership expense on the form B22A for a vehicle owned free and clear, or for prohibiting such a deduction, the court here is more persuaded by the reasoning adopted by courts approving the practice, particularly given the context of this case as a Chapter 7 proceeding. Like the courts in **Sawdy** and **Zak,** supra, this court finds the focus on the language of section 707(b)(2)(A)(ii)(I) to be helpful, regardless of the afore-mentioned difficulty with the "plain-meaning" rule. Citing the decision of **In re Fowler**, supra, 349 B.R. at 418, the court in **Sawdy** observed that

> the [**Fowler**] court discussed the fact that Congress said that the debtor's monthly expenses for categories of expenses listed in the National and Local Standards 'shall be the *applicable* monthly expense amounts specified under the National and Local Standards.' (Citation omitted). The **Fowler** court went on to note that in the very next part of that same sentence of section 707(b)(2)(A)(ii)(I), Congress said that the debtor's

7

> monthly expenses 'for the categories specified as Other Necessary Expenses' were the debtors '*actual*' expenses . (Citation omitted). This use of the word "applicable" in the context of some expenses and "actual" in the context of other expenses led the ***Fowler*** court to conclude that a debtor should be allowed to deduct the Local Standard amount for ownership of a vehicle regardless of whether he had a note or lease payment
>
> * * * *
>
> This argument leads to the conclusion that where Congress used the word "actual," it meant for the debtor to deduct only the amount the debtor actually had to pay for that particular expense. Where, in contrast, Congress used the work "applicable," it must have meant something other than the actual payment the debtor has to make each month. This begs the question – what else could Congress have meant by the word "applicable?"

***Sawdy,*** 2007 WL 582535 at *12. Similarly, the ***Zak*** court agreed with ***Fowler***'s comparison of the applications of the IRS Standards to determine a taxpayer's income for repayment of delinquent taxes and the presumption of abuse under the section 707 means test of the Code. "For purposes of taxpayer liability, the Standards are used as a cap because the taxpayer may deduct the allowed standard amount or the amount actually paid, whichever is less." ***Zak,*** 2007 WL 143065 at *6. "Under section 707(b)(2)(A), the Local Standards are used not as a cap, but as the actual deduction to which the Debtor is entitled." ***Id.,*** quoting ***In re Fowler,*** 349 B.R. at 417.

Both the ***Sawdy*** and ***Zak*** courts found this distinction particularly persuasive. Indeed, the ***Zak*** court quoted further from ***Fowler*** as follows:

> [S]ince the means test treats the Local Standards not as caps but as fixed allowances, it is more reasonable to permit a debtor to claim the Local Standards ownership expense based on the number of vehicles the debtor owns or leases, rather than on the number for which the debtor makes payment. This approach reflects the reality that a car for which the debtor no longer makes payment may soon need to be replaced (so that

8

> the debtor will actually have ownership expenses), and it avoids arbitrary distinctions between debtors who have only a few car payments left at the time of their bankruptcy filing and those who finished making their car payments just before filing.

*In re Zak*, 2007 WL 143065 at *6, quoting *In re Fowler,* 349 B.R. at 418-19.  The *Sawdy* court, in agreement with *Fowler*, further reasoned that had Congress wanted to use the National and Local Standards as a cap on a debtor's expenses, it would have worded the statute differently – possibly stating that the debtor could claim actual monthly expenses or the Local Standard, whichever was less.  *Sawdy, id.,* at *13.

Finally, as is the case here, the *Fowler* court found an additional basis on which to allow a debtor to take the Local Standards deduction for ownership of a car free and clear of debt in a Chapter 7 case – the contextual difference between a Chapter 13 objection to confirmation and a Chapter 7 motion to dismiss.  *Fowler,* supra, 349 B.R. at 420. In some Chapter 13 cases, during the life of a debtor's plan, a debtor might need to purchase a new car.  In such case, the court reflected, the debtor would be able to seek an adjustment of his plan payments to account for that.  *Id.*  No such adjustment is available to a court considering a motion to dismiss a Chapter 7 case, where the same need may arise. *Id.*

Accordingly, this court deems it more appropriate to allow the Debtors here to amend again their form B22A in order to set forth on Line 24 the prescribed amount of the IRS Transportation Standard, Ownership Costs, Second Car for this region. Increasing the Debtors' allowed deductions under 707(b)(2) will result in a negative monthly disposable income, and remove the presumption of abuse of the bankruptcy process that would otherwise arise.  Accordingly, a determination as to whether the

additional expenses described by the parties for commuting and replacement of the Debtors' 19-year old vehicle constitute "special circumstances" sufficient to rebut the presumption is not necessary.

### ORDER

In consideration of the foregoing, **IT IS HEREBY ORDERED** that the Motion of the US Trustee to dismiss the above-styled Chapter 7 proceeding pursuant to 11 U.S.C. 707(b)(2) is **OVERRULED.**

**IT IS FURTHER ORDERED** that the Debtors shall have ten (10) days from the date of entry of this Memorandum Opinion and Order to prepare and file a second amended Form B22A consistent with the provisions of the court's ruling.

Copies to:

Julie O'Bryan, Esq.
Rachelle Williams, Esq.
James Gardner, Trustee, Esq.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
*The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.*



**Signed By:**
*Joseph M. Scott*
**Bankruptcy Judge
Dated: Friday, March 23, 2007
(jms)**